UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-1011-B |
| | § | |
| CATSUP BURGER BAR, individually | § | |
| and d/b/a KETCHUP BURGER BAR, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff J&J Sports Productions, Inc.'s (J&J) Brief on the Appropriateness of Final Default Judgment. Doc. 37. For the reasons that follow, the Court **GRANTS** final default judgment in favor of Plaintiff.

## I.

## BACKGROUND

J&J filed suit alleging that Catsup violated the Federal Communications Act of 1934 (FCA) by broadcasting the Manny Pacquiao v. Timothy Bradley Welterweight Championship Fight Program (the Event) without obtaining a sub-license from J&J, the only license company authorized to sub-license the telecast of the event. Doc. 1, Compl., ¶¶ 7, 11, 18. Catsup answered the complaint, Doc. 14, Answer, and participated in the parties' Rule 26(f) conference, Doc. 25, but has failed to further participate in the case. After the Court issued two orders to show cause, Doc. 30; Doc. 32, to which Catsup failed to respond, the Court set a show-cause hearing, Doc. 33. Catsup failed to attend the hearing. As a consequence, the Court entered a conditional order of default judgment as a sanction

against Catsup. Doc. 36, Order. The Court ordered J&J to submit briefing explaining why default judgment was appropriate, whether there was sufficient basis in the pleadings for judgment, and evidence of damages and attorney's fees before the Court entered final default judgment. *Id.* at 3. J&J submitted its briefing so the issue is ripe for review.

## II.

## LEGAL STANDARD

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include:

> [1] whether material issues of fact are at issue; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover"). In doing so, courts are to assume that due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* However, a "defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.*

Third, courts determine "what form of relief, if any, the [plaintiff] should receive." *1998 Freightliner*, 548 F. Supp. 2d at 384. Normally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). But if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.

## ANALYSIS

*A.    Whether An Entry of Default Judgment is Procedurally Warranted*

J&J argues that default judgment is procedurally warranted because Catsup has failed to comply with the Federal Rules of Civil Procedure and this Court's orders, and Catsup's "lack of participation demonstrates an intention to no longer litigate the case." Doc. 37, Pl.'s Br., 1. J&J notes that Catsup failed to participate in scheduling mediation or mediation itself; failed to respond, object, or assert any privileges to any of J&J's discovery requests; failed to respond to J&J's motion for summary judgment; failed to comply with the Court's orders to show cause; and failed to attend the Court's show-cause hearing. *Id*. at 2–3.

The Court agrees that Catsup's lack of participation demonstrates that default judgment is procedurally warranted. First, although Catsup answered the complaint, its general denial of all of J&J's allegations does not create a material issue of fact. *See Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991) (finding that a plaintiff's general denial of defendant's motion for summary judgment did not create a material issue of fact). Second, Catsup's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Ins. Co. of the W. v. H & G*

*Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex, Oct. 5, 2011). Third, the Court's issuance of conditional default judgment established grounds for default judgment under Rule 37(b)[1], *see* Doc. 36, Order, and Catsup has not responded to any part of the proceedings since December 2017 at the latest, *see J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding that "[d]efault judgment is appropriate if defendants are 'totally unresponsive' and the failure to respond is 'plainly willful, as reflected by [the parties'] failure to respond either to the summons and complaint, the entry of default, or the motion for default judgment'" (quoting *Cumins Ins. Soc'y, Inc. v. Billups*, No. 10-1478, 2010 WL 4384228, at *2 (D.D.C. Nov. 4, 2010))). Fourth, there is no evidence before the Court to suggest Catsup's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, J&J seeks only the relief the law provides it, and Catsup has no applicable defense for its claims, at least as far as the Court can see, which "mitigat[es] the harshness of a default judgment." *John Perez Graphics & Design, LLC v. GreenTree Inv. Grp., Inc.*, No. 12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Sixth, and finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default, if it were challenged by Catsup. *Lindsey*, 161 F.3d at 893.

B.     *Whether There Is a Sufficient Basis for Judgment in the Pleadings*

In light of the entry of default, Catsup is deemed to have admitted the allegations set forth in J&J's complaint. Nonetheless, the Court must review the pleadings to determine whether they

---

[1]When the Court entered conditional default judgment pursuant to Rule 37(b), it considered "(1) whether the violation was willful or in bad faith rather than simply due to inability to comply, (2) whether less drastic sanctions would effect the goals of Rule 37(b), (3) whether the violation prejudiced the opposing party's trial preparation, and (4) whether the client knew of or participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney." Doc, 36, Order (quoting *U.S. For Use of M–CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1013 (5th Cir. 1987)).

present a sufficient basis for J&J's claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206. In conducting this analysis, the Fifth Circuit has looked to Rule 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (footnote and citations omitted). "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

J&J alleges that Catsup "willfully intercepted or received the interstate communication of the Event," or, alternatively, "assisted in the receipt of the interstate communication of the Event." Doc. 1, Compl. ¶ 13. Then, according to J&J, Catsup "transmitted, divulged and published [the Event] . . . to patrons within the Establishment . . . willfully and with the express purpose and intent to secure commercial advantage and private financial gain." *Id.* ¶¶ 13–14. This not only "infringed upon Plaintiff's exclusive rights" to broadcast the Event, *id.* ¶ 14, but also violated 47 U.S.C. §§ 553 and 605, *id.* ¶ 18.

A person violates 47 U.S.C. § 605 when he "intercept[s] any radio communication . . . [or] receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such communication . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). A person violates 47 U.S.C. § 553 when he "intercept[s] or receive[s] or assist[s] in intercepting or receiving any communications service offered over a cable system" without authorization. *Id.* § 553(a)(1). And when a person intercepts satellite or cable transmissions without

authorization, several courts have held that it violates both sections. *Entm't by J & J, Inc. v. Al-Waha Enters.*, 219 F. Supp. 2d 769, 774 (S.D. Tex. 2002) (collecting cases).

Here, J&J alleges the Event was transmitted via an "electronically coded or 'scrambled'" satellite signal and that Catsup intercepted it without authorization and exhibited it to its patrons for commercial benefit. Doc. 1, Compl. ¶¶ 10–14. The Court concludes that J&J's allegations state a viable claim for relief and are sufficient to provide Catsup with "fair notice" of its claim that it violated §§ 553 and 605 of the FCA.

C.   *Damages*

J&J seeks statutory damages for violation of § 605 of the FCA in the amount of $10,000, additional damages under the FCA because Catsup's alleged violation was willful, attorney's fees, and post-judgment interest. Doc. 37, Pl.'s Br., 12.

1.   Statutory Damages

Statutory damages for violations of § 605 of the FCA call for an award between $1,000 and $10,000 per violation, as the Court finds just. 47 U.S.C. § 605(e)(3)(C)(i)(II). If a Court finds a defendant violated the statute "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may increase the damage award by up to $100,000, at its discretion. *Id.* § 605(e)(3)(C)(ii).

Courts determine the reasonable amount of statutory damages by adding what the establishment would have paid in sub-licensing fees and an amount that the Court, in its discretion, deems reasonable to deter future violation. *See Joe Hand Promotions, Inc. v. Alima*, No. 13-cv-0889-B, 2014 WL 1632158, at *4 (N.D. Tex. Apr. 22, 2014) (awarding $5000 based on sub-licensing fees of $1100–1200 and the need to deter future violations); *J & J Sports Prods., Inc. v. Beck*, No. L-13-57,

2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013) (same); *Al-Waha Enters.*, 219 F. Supp. 2d at 776 (awarding $5000 based on sub-licensing fees of $1500 and the need to deter future violations).

The amount an establishment pays in sub-licensing fees for any event is based on the capacity of the establishment. Catsup's estimated capacity is between fifty-five and seventy-eight people. Doc. 37-1, Pl.'s Ex. A-2, Hutsell Aff; *id.*, Thomas Aff. Based on a capacity of fewer than one hundred patrons, Catsup would have paid $2200 in sub-licensing fees for this Event. See Doc 37-1, Pl.'s Ex. A-3, Rate Card. Based on the amounts awarded by previous courts, this Court finds that an additional $3800 is appropriate to deter future violations. Thus, Catsup owes $6000 in base statutory damages.

### 2. Additional Damages

J&J requests an additional $50,000 in damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), based on its allegation that "[d]efendant's actions were willful and 'for purposes of direct or indirect commercial advantage or private financial gain.'" Doc. 37, Pl.'s Mot., 9 (citations omitted). J&J presents no evidence demonstrating Catsup willfully violated the FCA, but insists it could not have "innocently" accessed the Event broadcast given how complex it is to intercept a transmission. *Id.* Courts have generally found this reasoning persuasive, as there are limited means by which defendants can access closed-circuit, pay-per-view events and because it would be unlikely for an establishment to intercept such broadcasts by chance. *See Al-Waha Enters.*, 219 F. Supp. 2d at 776–77 (finding willfulness given the "limited methods of intercepting closed-circuit broadcasting of pay-per-view events" and "the low probability that a commercial establishment could intercept such a broadcast merely by chance"); *J & J Sports Prods., Inc. v. Q Café, Inc.*, No. 10-CV-2006-L, 2012 WL 215282, at *5 (N.D. Tex. Jan. 25, 2012) (citing *Time Warner Cable v. Googies*

*Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not de-scramble spontaneously, nor do television sets connect themselves to cable distribution systems.")). Based on this line of cases, the Court likewise concludes that J&J's evidence and allegations are sufficient to support a finding of willfulness.

Further, the record indicates that Catsup exhibited the Event for either direct or indirect commercial gain, as there were patrons in the establishment on the evening in question. *See* Doc. 37-1, Ex. A-2, Hutsell Aff (recording an average of 21 people in attendance); *id.*, Thomas Aff (recording an average of 18 people in attendance). Additionally, Catsup displayed the Event on six big-screen televisions and served food and beverages. *Id.* These facts have been enough for other courts to find a commercial motive. *See Joe Hand Promotions, Inc. v. 152 Bronx*, 11 F. Supp. 3d 747, 756 (S.D. Tex. 2014) (finding the number of televisions broadcasting the event relevant to determining commercial motive); *Joe Hand Promotions Inc. v. Chios, Inc.,* Civil Action No. 4:11-cv-2411, 2012 WL 3069935, at *6 (W.D. Tex. July 27, 2012) (finding the sale of food and beverage indicative of commercial gain). Thus, the Court determines there is sufficient evidence to establish Catsup had a commercial motive for broadcasting the Event.

Because the Court determines that Catsup broadcast the Event willfully and for commercial gain, it must now decide by how much to increase the base amount of statutory damages. 47 U.S.C. § 605(e)(3)(C)(ii). Courts have awarded three to eight times the base statutory damages as additional damages. *Q Café, Inc.*, 2012 WL 215282 at *5. To determine by how much to multiply the base statutory damages, courts consider a multitude of factors, including: (1) whether the establishment charged a cover to view the event, (2) the number of televisions on which the

establishment showed the event, (3) whether the establishment advertised the event, (4) how many people were in attendance, (5) whether the establishment was a repeat offender, and (6) whether the establishment was in an urban area. *See, e.g., Alima*, 2014 WL 1632158, at *5 (awarding four times the statutory base award as additional damages where defendant charged a cover and showed the event on nine screens to approximately 85 to 125 patrons); *Beck*, 2013 WL 5592333, at *3 (awarding three times the base because defendant did not charge a cover, only thirty patrons viewed the event, and defendant was not a repeat offender); *Q Café Inc.*, 2012 WL 215282 at *5 (awarding five times the base statutory amount in part because the establishment was in an urban area); *J&J Sports Productions, Inc. v. Garcia,* Civil Action No. H-08-1675, 2009 WL 2567891, at *4 (S.D. Tex. Aug. 14, 2009) (awarding four times the statutory damages because the defendant openly advertised the event outside the establishment).

Here, Catsup did not charge a cover, and displayed the event on only six screens to approximately fifteen to eighteen people. Doc. 37-1, Ex. A-2, Hutsell Aff; *id*. Thomas Aff. There is no evidence that Catsup advertised the event or that it is a repeat offender. But Catsup is located in an urban area. Therefore, Court finds that an additional damages award of three times the base amount is reasonable. Thus, the Court awards $18,000 in total statutory damages.

    3.       Attorney's Fees

Under the FCA, the Court is required to order the recovery of full costs, including attorney's fees, to an aggrieved party who prevails. 47 § U.S.C. 605(e)(3)(B)(iii). J&J seeks one-third of its recovery or alternatively, the actual time Plaintiff's attorney, David Diaz, spent litigating the case. Doc. 37, Pl.'s Br., 12. It also seeks attorney's fees for post trial and appellate services. *Id*. Mr. Diaz estimates he spent 27.75 hours working on this case at a rate of $250 per hour, totaling $6937.50.

Doc. 37-1, Ex. B, Diaz Aff.

The Fifth Circuit has described the procedure and standard for determining attorney's fees as follows:

> The determination of a fees award is a two-step process. First, the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 F.Appx 116, 124 (5th Cir. 2012) (quoting *Jiminez v. Wood Cty.*, 621 F.3d 372, 379–80 (5th Cir. 2010)). The *Johnson* factors are (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

After considering the Johnson factors, the Court finds Mr. Diaz's estimated hours spent and hourly rate charged reasonable given his experience with anti-piracy cases and the authority he attaches to his affidavit,. Doc 37-1, Ex. B, Diaz Aff.; Doc 37-1, Ex. B-1, David M. Diaz Resume; Doc 37-1, Ex. B-2, Texas Lawyer 2014 Salary and Billing Report. Thus, the Court awards $6937.50 in attorney's fees.[2]

---

[2] Mr. Diaz lists six fees for post-judgment and appellate work that he presumably wishes the Court to award on a contingent basis. See Doc. 37-1, Ex. B, Diaz Aff. But Mr. Diaz has presented only scant evidence that the fees listed are reasonable for that work and no evidence that post-judgment or appellate

    4.       Post-Judgment Interest

Post-judgment interest is governed by 28 U.S.C. § 1961(a), which sets the rate at the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of the judgment. The rate for the week ending April 13, 2018[3] is 2.10%. *See* http://www.txnd.uscourts.gov/post-judgment-rates. Therefore, the Court awards post-judgment interest on J&J's statutory damages from this date forward at a rate of 2.10%.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** final default judgment in favor of J&J**.** It is therefore **ORDERED**, **ADJUDGED**, and **DECREED** that J&J is entitled to the following relief:

    1.       $18,000 in total statutory damages;

    2.       Attorney's fees totaling $6937.50;

    3.       Post-judgment interest at a rate of 2.10%; and

    4.       Costs of court.[4]

---

work is likely in this case. Thus, the Court awards Mr. Diaz attorney's fess only for work actually performed. *See J&J Sports Prods., Inc. v. Old Town Ranchers, Inc.*, Civil Action No. 3:16-cv-2104-B, 2017 WL 2404988 at 6 n.2 (N.D. Tex. June 2, 2017) (denying Mr. Diaz's request for contingent fees and granting fees for work actually performed).

[3] As of April 25, 2018, the post-judgment interest rate for the week ending April 20, 2018 was not yet available.

[4] *See* Fed. R. Civ. P. 54(d)(1).

SO ORDERED.

SIGNED: April 25, 2018.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE